**COURT OF APPEALS
DECISION
DATED AND FILED**

**September 14, 2021**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2021AP244**

**STATE OF WISCONSIN**

Cir. Ct. No.  2019ME362

**IN COURT OF APPEALS
DISTRICT III**

IN THE MATTER OF THE MENTAL COMMITMENT OF J. J. H.:

OUTAGAMIE COUNTY,

 PETITIONER-RESPONDENT,

 V.

J. J. H.,

 RESPONDENT-APPELLANT.

APPEAL from orders of the circuit court for Outagamie County: VINCENT R. BISKUPIC, Judge. *Reversed.*

¶1    STARK, P.J.[1]  Jason[2] appeals from orders extending his WIS. STAT. ch. 51 involuntary commitment, and for his involuntary medication and treatment.

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

Jason challenges the sufficiency of the evidence establishing that he was dangerous to himself or others under any of the standards set forth in WIS. STAT. § 51.20(1)(a)2. We reverse the recommitment order and the associated order for involuntary medication and treatment because the court failed to make specific factual findings with reference to the statutory basis for its determination of dangerousness as required by *Langlade County v. D.J.W.*, 2020 WI 41, 391 Wis. 2d 231, 942 N.W.2d 277.

## BACKGROUND

¶2     In October 2019, Jason was involuntarily committed after he was found with significant self-inflicted knife injuries from attempting suicide. Jason stipulated to a six-month extension of the commitment and to the entry of an involuntary medication and treatment order, but he challenged Outagamie County's subsequent petition to extend his commitment and involuntary medication and treatment orders by an additional year.

¶3     The circuit court held a recommitment hearing on October 30, 2020. During the hearing, Jason's Outagamie County case manager, Alexandria Krouth, testified that she recommended recommitment because "[Jason] has been returned to a more restrictive [placement] twice in the last two-and-a-half weeks due to decompensation, and my concern for him is, moving forward, that this continues to get worse." Krouth explained that she had recently learned that at some unknown time Jason had stopped taking his medications, and that he had recently "displayed significant decompensation, delusions, and agitation" which Krouth

---

[2] For ease of reading, we refer to the appellant in this confidential matter using a pseudonym, rather than his initials.

believed could lead to the same type of violent behavior that had led to Jason's original commitment.

¶4      Krouth testified that although Jason had not threatened or attempted to harm himself or others over the course of the previous year, he had been experiencing significant paranoia and had smashed a laptop at his family home after expressing frustration with his virtual learning, and he had sworn at his younger siblings. Krouth testified Jason told her that "the world is ending, and [Jason] doesn't feel that he can trust anyone." She stated that during an appointment with his treating psychiatrist Dr. Marshall Bales, Jason began yelling and pointing fingers and getting "verbally aggressive," prompting the police to be called to transport him to the hospital. Krouth testified that she did not feel safe transporting Jason to the hospital because she "just felt that—[h]e did have a lot of anger towards me, and me representing his commitment, and the government, and I just felt it best that the police transport [him] at that time." Finally, Krouth stated that Jason did not believe he had a mental illness.

¶5      Doctor Bales testified that Jason "has had an emergent psychotic state." He further stated that Jason "was very irritable, and I talked to him for awhile, but he was irrational and, as I interviewed him, he was distinctively psychotic, he was paranoid, his thoughts were disorganized, he was very labile." Doctor Bales testified that Jason had been diagnosed with schizoaffective disorder, and that due to Jason's paranoia and accusatory nature, Dr. Bales had called the police after a recent meeting with him. Doctor Bales also opined that Jason's behavior would cause a reasonable person to fear for his or her safety. Doctor Bales concluded that Jason's condition was treatable, and that he was not competent to make an informed choice as to his medications.

¶6    The circuit court concluded that the County had proven by clear and convincing evidence that Jason suffered from a mental illness, was a proper subject for treatment and was dangerous.  The court entered a recommitment order for one year, along with an accompanying involuntary medication and treatment order for the same period.  Jason now appeals.

## DISCUSSION

¶7    Jason does not contest that the circuit court properly found that he was mentally ill and a proper subject for treatment.  He asserts however, that the County failed to present clear and convincing evidence that he was dangerous.  He therefore argues that his commitment and the associated involuntary medication and treatment orders must be reversed.

¶8    In a recommitment proceeding, the County has the burden to prove all required facts by clear and convincing evidence.  *D.J.W.*, 391 Wis. 2d 231, ¶23.  Whether the County met its burden of proof to support the extension of Jason's commitment presents a mixed question of fact and law.  *See Waukesha Cnty. v. J.W.J.*, 2017 WI 57, ¶15, 375 Wis. 2d 542, 895 N.W.2d 783.  We uphold the circuit court's findings of fact unless they are clearly erroneous, but whether the facts satisfy the statutory standard is a question of law that we review independently.  *Id.*

¶9    In finding that Jason was a danger to himself or others, the circuit court stated:

> [Jason's] recent flare-ups and angry behavior, of verbal behavior—that doesn't always equate to a threat to hurt themselves or hurt somebody else—what was described as some higher level of agitation, defiance, had some behavior with the caseworker and the doctor, some behavior with the family members that was described recently, destruction of

4

property, clenching of fists, pointing. Maybe each one of those in a vacuum may be innocuous or non-persuasive, but the Court does look at the collective behavior, also look at beyond the actions and physical actions, the things the Court would view as potentially threatening and at least interpreted as threats by the doctor and the caseworker.

The Court also looks at the recent history of at least a pattern of acts, but also omissions. The concerted effort or omissions of taking his medication that's leading to the psychotic behavior that's brought him back to Winnebago County.

….

So this Court feels there's multiple grounds of recent behavior, not just him acting out with what's been interpreted by the doctor and the caseworker as threats, but also his obstinance or defiance in taking his medication which is critically important to his being on a better path to stability.

….

But the Court does find that the County, the Corporation Counsel, has demonstrated by clear and convincing evidence to meet the Statutes regarding recent threatening behavior, but equally important, his omissions and his acts and omissions in not taking his medication and not tending to his mental health issues.

¶10　In questioning the sufficiency of the County's evidence, Jason analyzes whether the evidence supported a finding of dangerousness under WIS. STAT. § 51.20(1)(a)2.a., b. and c., with the latter applied through the lens of § 51.20(1)(am). While not specifically argued by Jason, we nevertheless conclude that the outcome of this appeal is determined by the circuit court's failure to comply with the requirements established in *D.J.W.* The County concedes, and we agree, that the court failed to follow *D.J.W.*'s mandate that a circuit court make specific factual findings with respect to the particular subdivision paragraph or paragraphs of § 51.20(1)(a)2. on which the recommitment is based. *See D.J.W.*,

5

391 Wis. 2d 231, ¶40. The court's recommitment order and associated involuntary medication and treatment order must therefore be reversed.

¶11 The County nevertheless argues that we should affirm the circuit court's orders because the court articulated why it believed Jason to be currently dangerous. Although the court did not specify the dangerousness standard upon which it relied, the County contends that we can determine from the record that the court found Jason to be dangerous under WIS. STAT. § 51.20(1)(a)2.c., and that its finding is supported by the evidence.

¶12 We acknowledge that the circuit court articulated certain facts it relied upon to find Jason to be currently dangerous. However, an explanation removed from the applicable standards of WIS. STAT. § 51.20(1)(a)2. does not meet *D.J.W.*'s requirements. *See D.J.W.*, 391 Wis. 2d 231, ¶40. The court's use of language such as "recent threatening behavior" and "omissions" is not exclusive to a particular dangerousness standard. *D.J.W.* mandates a higher level of specificity to extend a WIS. STAT. ch. 51 commitment. *See id.* Specifying the subdivision paragraph at issue in a dangerousness determination provides clarity and enhanced protection for patients subject to ch. 51 commitments, and a general discussion divorced from these standards is no substitute. *See id.*, ¶42. We must therefore reverse the order extending Jason's commitment and the associated order for involuntary medication and treatment. We need not address Jason's additional arguments regarding the sufficiency of the evidence. *See Turner v. Taylor*, 2003 WI App 256, ¶1 n.1, 268 Wis. 2d 628, 673 N.W.2d 716.

¶13 The County also requests that we remand to the circuit court for further proceedings to permit the court to make specific factual findings in compliance with *D.J.W.*'s requirements. The recommitment order was entered

almost a year ago, however, and Jason has not been afforded the clarity and additional protections guaranteed by *D.J.W.* for that entire period. Remedying that violation now would be "far too late to be meaningful." *See Eau Claire Cnty. v. J.M.P.*, No. 2020AP2014-FT, unpublished slip op. ¶22 (WI App June 22, 2021).[3] The remedy of reversal also ensures that Jason is not deprived of his right to a meaningful appeal, as it would be extremely unlikely that he could appeal from the results of a new hearing before his current recommitment order becomes moot. *See id.* Accordingly, outright reversal is appropriate. We therefore reverse Jason's recommitment order and the associated order for involuntary medication and treatment.[4]

*By the Court.*—Orders reversed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

---

[3] *See* WIS. STAT. RULE 809.23(3)(b) (permitting the citation of authored, unpublished opinions issued after July 1, 2009, for their persuasive value).

[4] We decline to address Jason's preemptive mootness argument because we are releasing this opinion before either Jason's recommitment order expires or a new extension of his commitment is entered.